**DOKO FARMS, a Partnership, and James Porter, Alison v. Barnett, L.D. Smith, William T. Curry, Plaintiffs–Appellees,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 91–5063.**

United States Court of Appeals, Federal Circuit.

Feb. 13, 1992.

Rehearing Denied March 13, 1992.

Albert B. Krachman, Bracewell & Patterson, Washington, D.C., argued, for plaintiffs-appellees.

Judith Rabinowitz, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., Michael F. Hertz, Director and Thomas W. Petersen, Asst. Director.

Before NIES,, Chief Judge, MARSHALL, Associate Justice (Retired) of the Supreme Court of the United States, sitting by designation, and FRIEDMAN, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is the latest, but unfortunately not the last, round in this protracted litigation, now in its twelfth year, through which the United States is seeking to recoup from the appellees, Doko Farms and its four individual partners (collectively "Doko"), subsidy payments made to Doko that the United States has determined resulted from a scheme or device to defeat the purpose of the Act under which the payments were made. The recoupment took the form of an offset of the overpayments against subsidy payments due to Doko for subsequent years. The United States Claims Court held that Doko was entitled to recover the withheld payments, on the ground that a 1981 district court decision that the statute of limitations barred the government's suit

to collect the overpayments, was *res judicata* with respect to the government's claim to recover the overpayments. *Doko Farms v. United States*, 21 Cl.Ct. 696 (1990). We reverse, and remand the case to the Claims Court to decide the merits.

## I.

Under the Upland Cotton Price Support Program, 7 U.S.C. 1444(e) (1988), the government made subsidy payments to reflect farmers' limitations on the amount of cotton they planted and grew on their land. Following an investigation of payments made in a Texas county in 1972 and 1973 that appeared to be abnormally high and administrative proceedings (including hearings), the Department of Agriculture held that a number of farmers in that county, including Doko, had committed various violations of the governing regulations that constituted a "scheme or device" to defeat the purpose of the upland cotton program or had avoided limitations upon the amount of payments. *See United States v. O'Neil*, 709 F.2d 361, 364–65 (5th Cir.1983). In each of those proceedings the government ordered the recipients of the excess payments to refund them. *Id.* at 365.

The farmers refused to do so. The United States then filed in 1978 and 1979 eleven suits in the United States District Court for the Northern District of Texas seeking to recover the overpayments. Each defendant filed a counterclaim seeking (1) the removal of the farmers' names from the Federal Debt Register, a listing of persons indebted to the government, the effect of which listing was that the government would withhold from amounts subsequently owing to the debtors the amount of the indebtedness, (2) release of the withheld money and (3) the return of cotton allotments that the government had cancelled as a result of its determination that the defendants had violated the upland cotton program.

On cross-motions for summary judgment, the district court, on April 3, 1981, granted summary judgment in favor of the defendants in each of the cases. The court held that the six-year statute of limitations in 15 U.S.C. 714b(c) (1988), barred the suit or, alternatively, that one of the regulations upon which the government based its refund claim was unconstitutionally vague. The separate judgment entered in the *Doko* case stated that the United States "take nothing of and from" Doko, dismissed the complaint against Doko with prejudice, and "severed" Doko's counterclaim from "the cause of action alleged by plaintiff" and set it for trial "separately and at a later date."

The government failed to file a timely appeal from the judgment in the *Doko* case and three others, in the belief that the pendency of the severed counterclaim made the judgments non-final. When the government failed to appeal the *Doko* judgment within sixty days, the district court granted summary judgment for Doko on its counterclaim.

The Court of Appeals for the Fifth Circuit held that the government's appeals were untimely, and "affirm[ed] the district court in the government's suits against appellees." *O'Neil*, 709 F.2d at 375. (*O'Neil* decided *Doko* and the three other cases.) The court reversed the summary judgments on the counterclaims, however, and remanded the counterclaims to the district court to determine whether that court had jurisdiction over them. *Id.*

(Shortly before its decision in *O'Neil*, the court of appeals had decided *United States v. Batson*, 706 F.2d 657 (5th Cir.1983), involving the other seven cases in which the United States had filed timely appeals. In *Batson*, the court of appeals held (1) that the statute of limitations had not run on the government's suits based on the 1973 subsidy payments, but had run on the 1972 payments and (2) that the regulation was not unconstitutionally vague. *Id.* at 674, 677, 683.)

On remand, the district court held that it had jurisdiction over the counterclaims under the mandamus statute, 28 U.S.C. § 1361 (1988) and again held for Doko (and the three other defendants). The Fifth Circuit dismissed, holding that mandamus was improper and that the Claims Court had exclusive jurisdiction over the counterclaims, and granting Doko leave to refile in

that court. *United States v. O'Neil,* 767 F.2d 1111, 1113 (5th Cir.1985). Doko then filed its complaint in the Claims Court, seeking the identical relief it had sought in its counterclaim in the district court, and the government filed a counterclaim, seeking the identical relief it had sought in its complaint in the district court.

Litigation followed over whether the Claims Court or the district court had jurisdiction over the case. The Claims Court transferred the case back to the district court, which again held for Doko. On the government's appeal, this court held that under *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the earlier decision of the Fifth Circuit that the Claims Court had exclusive jurisdiction was the law of the case, vacated the judgment of the district court and remanded the case to that court to transfer it to the Claims Court. *Doko Farms v. United States,* 861 F.2d 255, 257 (Fed.Cir.1988). The parties then filed in the Claims Court a new complaint and a new counterclaim, seeking the same relief as in their previous filings.

The Claims Court granted Doko's motion for summary judgment, denied that of the government, and awarded Doko $1,011,-721.70, plus interest. *Doko Farms,* 21 Cl. Ct. at 713.

The court held that the 1981 district court judgment that the statute of limitations barred the government's suit was *res judicata* of the issues raised in the government's counterclaim. The court ruled that that judgment met the three requirements for *res judicata* (*id.* at 709): (1) it was a final judgment on the merits because " '[a] ruling based on the statute of limitations is a decision on the merits for *res judicata* purposes,' " *id.* at 703 (quoting *Mathis v. Laird,* 457 F.2d 926, 927 (5th Cir.), *cert. denied,* 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972)); (2) the government's counterclaim was for the same cause of action as that asserted in the government's original claim that the district court held barred by limitations (*id.* at 706–08); and (3) the parties in the present suit were the same as those in the district court case,

even though they changed roles as plaintiff and defendant (*id.* at 708). The court ruled that since the district court decision extinguished Doko's debt to the government, the latter had no basis for continuing to withhold Doko's funds and that Doko, therefore, was entitled to the relief it sought. *Id.* at 712.

The court stated:

[T]he district court, with the validity of the debt at issue before it, found the actions to be barred by the statute of limitations and the regulation that Doko Farms allegedly violated to be unconstitutionally vague and overbroad. The finality of this judgment was thereafter affirmed by the Fifth Circuit as follows:

Accordingly, we affirm the district court in the government's suits against appellees [Doko Farms].

*United States v. O'Neil,* 709 F.2d at 375. Consequently, the Government no longer has a debt due and owing by Doko and can no longer justify maintaining Doko Farms' name on the debt register and withholding funds due the plaintiffs on this and other agriculture subsidies earned as an administrative offset.

*Id.*

"In an effort to simplify the issue and bring this matter to a close," the government challenges only the summary judgment against it, but not the dismissal of its counterclaim.

II.

■ A. The Claims Court held that the 1981 district court judgment that the statute of limitations barred the government's attempt to recoup the amount by which it administratively had determined that Doko's cotton subsidy payments were improper, was *res judicata* of the issues before the court because the effect of that judgment was to eliminate Doko's indebtedness to the government for those overpayments. According to Doko, the debt merged in the judgment and ceased to exist after the government failed timely to appeal from the judgment.

The district court judgment, however, did not purport to and did not adjudicate the merits of the government's claim against Doko. The court did not find, as the Claims Court stated, "the alleged debt to be invalid," 21 Cl.Ct. at 711, or that Doko had not engaged in a scheme or device to defeat the uplands cotton subsidy program. The district court held only that the government could not maintain its suit to recover the overpayments because the statute of limitations barred the suit. That holding determined nothing with respect to the merits of the government's claim, but only that the district court could not entertain the government's suit to enforce the claim because the suit was untimely. "[S]tatutes of limitation go to matters of remedy, not to destruction of fundamental rights." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

The fact that the ordering portion of the district court's judgment, which reflected the court's decision that the government's suit was time-barred, stated that the government would "take nothing of and from" Doko did not convert that judgment into an adjudication that Doko's indebtedness to the government no longer existed. The reason the government would "take nothing" from Doko in its suit was because the statute of limitations had run on the government's claim, not because the government's claim had been discharged or eliminated. The phrase, which apparently is one frequently used by Texas state courts in their judgments, *see, e.g., Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 640 (5th Cir.1991); *Permian Oil Co. v. Smith*, 129 Tex. 413, 73 S.W.2d 490 (1934), was but the result of the court's dismissal of the government's complaint as untimely.

Courts have recognized and held that the fact that the statute of limitations bars a government suit to collect an amount due to it does not bar the government from invoking its administrative remedies to offset the indebtedness against other claims by the debtor. *E.g., Thomas v. Bennett*, 856 F.2d 1165, 1169 (8th Cir.1988); *United States v. Missouri Pac. R.R. Co.*, 250 F.2d 805, 808 (5th Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); *Union Pac. R.R. Co. v. United States*, 137 Ct.Cl. 267, 147 F.Supp. 483, 484–85, *cert. denied*, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957).

*Union Pacific* was a suit by the railroad to recover overpayments it voluntarily had refunded to the United States. After the statute of limitations had run on the government's right to sue for the overpayments (the same statute here involved, 15 U.S.C. § 714b(c)), the railroad sued to recover them. Our predecessor court, the Court of Claims, the decisions of which bind us, *South Corp. v. United States*, 690 F.2d 1368, 1369, 215 USPQ 657, 658, 1 Fed.Cir. (T) 1, 2 (1982), held that the government could offset the amounts the railroad had refunded. The court stated:

> Congress did not, by [15 U.S.C. § 714b(c)] mean more than it said, which was that no suit could be brought upon claims more than six years old. We think it did not intend to disturb the normal processes of administrative settlement. . . .

147 F.Supp. at 485.

Indeed, in the second appeal in *O'Neil*, which included the *Doko* case, the Fifth Circuit, in holding that the district court improperly had granted mandamus, pointed out that the farmers "have not demonstrated a clear right to receive the disputed funds or a corresponding duty by the USDA to disburse these funds to them. The government may attempt to collect the alleged overpayments through administrative channels, even though its right to sue in the courts is now foreclosed." *O'Neil*, 767 F.2d at 1113.

In *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), the Supreme Court dealt with a similar question. North Dakota, which claimed ownership of a riverbed in the State on the ground it had belonged to the State when North Dakota was admitted to the Union, filed suit in the district court against federal officials under the Quiet Title Act of 1972, to establish its ownership. The

government contended that the Quiet Title Act's statute of limitations, 28 U.S.C. § 2409a(f) (1982) (current version at 28 U.S.C. § 2409a(g) (1988)), barred the suit. The court of appeals held that the limitation provision did not apply to the States.

The Supreme Court held that the limitations period applied to the States. The Court also rejected North Dakota's contention that the limitations period was unconstitutional insofar as it barred suits for land the State owned when it was admitted to the Union. The Court stated that a statute "depriving a State of land vested in it by the Constitution"

> would constitute a taking of the State's property without just compensation, in violation of the Fifth Amendment. Section 2409a(f), however, does not purport to strip any State, or anyone else for that matter, of any property rights. The statute limits the time in which a quiet title suit against the United States can be filed; but, unlike an adverse possession provision, § 2409a(f) does not purport to effectuate a transfer of title. If a claimant has title to a disputed tract of land, he retains title even if his suit to quiet his title is deemed time-barred under § 2409a(f). A dismissal pursuant to § 2409a(f) does not quiet title to the property in the United States. The title dispute remains unresolved. Nothing prevents the claimant from continuing to assert his title, in hope of inducing the United States to file its own quiet title suit, in which the matter would finally be put to rest on the merits.

*Id.* at 291–92, 103 S.Ct. at 1821–22 (footnotes omitted).

Similar reasoning supports the conclusion in the present case that the district court's determination that the statute of limitations barred the government's suit did not determine the merits of the government's claim that the subsidy payments to Doko were improper. Like the title dispute in *Block*, the validity of the payments "remains unresolved" despite the dismissal of the suit as time-barred, and that dismissal did not "purport to effectuate" the discharge of Doko's debt to the United States.

In *Amoco Prod. Co. v. United States*, 852 F.2d 1574 (10th Cir.1988), the court of appeals held that a district court decision that the same statute of limitations barred the plaintiff's quiet title action against the United States did not preclude litigation of the title question under the United States' counterclaim. The district court had decided the merits of the title question. Applying *Block*, the court of appeals held that "the district court['s] determin[ation] that plaintiffs' suit was time-barred by section 2409a(f) ... does not effect the substantive rights and claims of the parties to title in the property...." *Id.* at 1578. The court also ruled: "The district court's conclusion that the time-bar finding extinguished the United States' counterclaim was also incorrect." *Id.* at 1579.

Although both *Block* and *Amoco* involved the statute of limitations of the Quiet Title Act, the reasoning of those cases is equally applicable in determining the effect of the statute-of-limitations bar that the district court applied in the present case.

Thus, even if, as the Claims Court stated, "a dismissal based on the statute of limitations is a decision on the merits" for *res judicata* purposes, *Doko Farms*, 21 Cl.Ct. at 703–04, that principle would bar the government only from again bringing its own suit against Doko to recover the overpayments. It would not bar the government from recovering the money by administratively offsetting the over-payments against subsidy due to Doko for subsequent years, as it did in this case, or from defending against Doko's suit by relying upon the basis for the offset.

■ B. Doko contends, however, that the government's failure to appeal from the Claims Court's dismissal of its counterclaim bars it from now seeking to enforce its claim against Doko, because it was the counterclaim in which the government asserted its right to offset Doko's debt for the 1973 overpayments against amounts due to Doko for subsidy payments for subsequent years.

The substantive issues under Doko's complaint and the government's counter-

claim were identical, however. Under each, the ultimate question is whether, as the government administratively found, Doko had engaged in a scheme or device to defeat the upland cotton program. If the government were to prevail on Doko's complaint, the result would be the same as if it had prevailed on its counterclaim: Doko could not recover the withheld amount from the government, which could retain it.

Indeed, Doko's complaint in the Claims Court sought the same relief as its counterclaim in the district court, and the government's counterclaim in the Claims Court sought the same relief as its complaint in the district court. As the Claims Court pointed out in holding that, for *res judicata* purposes, the parties were the same in the two cases, "[w]hen Doko initially asserted its counterclaim against the Government in the district court action, the relief sought was merely the flip side or the consequence of denying the Government's claim." 21 Cl.Ct. at 710. The fact that up to this point in the litigation each side had filed either a complaint or a counterclaim at every stage of the proceedings and had pressed its position under the particular pleading then involved, did not require the government to continue the practice in this court in order to preserve its right to litigate the underlying merits issue.

■ C. It is unclear to what extent, if any, the Claims Court relied upon the district court's alternative ground for dismissing the government's claim that the regulation was unconstitutionally vague, as a basis for its holding that the district court judgment was *res judicata* on the merits of the government's claim. *Cf.* 21 Cl.Ct. at 712. Any such reliance, however, was misplaced.

As the Supreme Court pointed out in *Block*, "If North Dakota's suit is barred by § 2409a(f), the courts below had no jurisdiction to inquire into the merits." 461 U.S. at 292, 103 S.Ct. at 1822. *Accord, Amoco*, 852 F.2d at 1578 ("Once the district court determined that plaintiffs' suit was time-barred ..., the suit was extinguished procedurally and the district court was precluded from reaching the substantive mer-

its of the plaintiffs' suit.") Upon deciding that the statute of limitations barred the government's suit, the Texas district court had no authority to determine that the regulation was unconstitutional. The latter ruling was dictum and, therefore, could not be *res judicata* in the present case. *See* Restatement (Second) Judgments, § 27, comments h & i.

### III.

■ The governing statutes and regulations authorized, if not required, the withholding offset the government administratively made and justified the government's reliance on that offset to oppose Doko's attempt to recover the withholding through its Claims Court suit. "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1601, 91 L.Ed. 2022 (1947) (quoting *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841)).

Section 2415(a) of Title 28, provides a six-year statute of limitations for any suit by the government for "money damages." 28 U.S.C. § 2415(a) (1988). Section 2415(f), however, states that this provision "shall not prevent the assertion, in an action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* at § 2415(f). Section 714b(c) of Title 15 provides that "[t]he defendant in any suit by or against the [Commodity Credit] Corporation may plead, by way of set-off or counterclaim, any cause of action, whether arising out of the same transaction or not, which would otherwise be barred by such limitation if the claim upon which the defendant's cause of action is based had not been barred prior to the date that the plaintiff's cause of action arose." 15 U.S.C. § 714b(c). Finally, 31 U.S.C. § 3716(a)

(1988) authorizes agency heads, when an attempt to collect a debt due to the United States has failed, to "collect the claim by administrative offset," in accordance with regulations they have prescribed.

Department of Agriculture Regulations specifically require withholding or setoff "against debts of the recipients," of amounts disburseable under programs the Department administers. 7 C.F.R. § 13.1 (1982) (current version at 7 C.F.R. § 1403.7 (1991)). One of the cases in which "[w]ithholding shall be made" is "Where there has been a serious breach of contract or violation of program requirements and the withholding action is considered necessary to protect the financial interest of the Government." 7 C.F.R. § 13.3(a) (1982) (current version at 7 C.F.R. § 1403.8 (1991)). The Department's administrative determination found that Doko's conduct involved a violation of program requirements and found Doko liable for a refund of $1,116,957; the large refund owed justified a withholding to protect the government's financial interest.

Doko argues that these statutes are inapplicable and that other regulations bar the government from the withholding. Those arguments all are premised upon Doko's contention that the 1981 district court judgment extinguished Doko's debt and the government's cause of action to collect it. As we have held in Part II of this opinion, the 1981 judgment did not have that effect. Moreover, the government administratively offset the amount of the improper subsidy payments to Doko against subsidy payments to Doko for subsequent years before the 1981 judgment.

## IV.

Finally, in its reply brief the government urges us not only to vacate the Claims Court judgment in favor of Doko, but, also, to "sustain the Department of Agriculture's authority to offset Doko Farms' liability for payments procured, as a matter of law, by scheme or device to evade the Upland Cotton Price Support Program for their personal gain and the taxpayer's loss." It refers to 7 U.S.C. § 1385 (1988), which provides:

> The facts constituting the basis for ... payment under the ... upland cotton ... program[] ... when officially determined in conformity with the applicable regulations prescribed by the Secretary ... shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.

The government notes that in the second *Batson* appeal, *United States v. Batson,* 782 F.2d 1307, 1310 (5th Cir.) *cert. denied,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986), the court of appeals held that "this provision precludes this court from reviewing [Agriculture's] findings of fact," and it contends that the administrative findings in this case "establish[] Doko Farms' debt as a matter of law."

We decline the government's invitation and conclude that the proper disposition of this case is the one the government proposed in its opening brief: "to remand the case for a determination of whether the Department of Agriculture properly exercised its authority to offset Doko Farms' debt." As the Fifth Circuit noted in the first *Batson* appeal, the precise scope of this preclusion of judicial review is unclear. 706 F.2d at 684–85. Like the court in *Batson,* "[w]e leave that judgment initially to the [Claims Court] on remand." *Id.* at 685.

## CONCLUSION

The judgment of the Claims Court is reversed and the case is remanded to that court for further proceedings on the merits consistent with this opinion.

### REVERSED and REMANDED.

### COSTS

No Costs.